UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JULIA ROSE,

      Plaintiff,

v.

Case No. 2:26-cv-484-KCD-KRH

ARTS BONITA, INC., A FLORIDA
NOT-FOR-PROFIT
CORPORATION;  CITY OF
BONITA SPRINGS, A FLORIDA
MUNICIPAL CORPORATION
SERVICE-CITY CLERK; AND
MAUREEN ROBERTS,
INDIVIDUALLY;

      Defendants,

_____/

## **ORDER**

This dispute began at an outdoor art festival in Riverside Park, where Plaintiff Julia Rose sought to display and sell her paintings. Her artwork reflects her deeply held Christian faith, pairing images of Jesus with President Trump. Here is an example:



(Doc. 23 at 3.)[1] But the festival's organizer, Arts Bonita, Inc., saw a problem. Citing complaints and an apparent mismatch with the style she had originally submitted for selection, the festival's director ordered Rose to leave. (Doc. 1 at 2-3.) Rose packed up her tent under protest and now turns to federal court for relief.

In her complaint, Rose asserts a wide array of constitutional, statutory, and common-law claims against Arts Bonita and others. She alleges that her ejection was viewpoint and religious discrimination under the First Amendment and Florida's Religious Freedom Restoration Act (Counts I and II). She also claims public accommodation discrimination and retaliation under the Florida Civil Rights Act (Counts III and IV). And to round it all out, she asserts claims for breach of contract, fraud, and intentional infliction of emotional distress (Counts V, VI, and VII).

Arts Bonita now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) For the reasons below, the motion is **GRANTED**.

## I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain more than legal labels or hint at a general grievance. It must allege

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). But that deference has a limit: we leave legal conclusions, naked assertions, and "formulaic recitation[s] of the elements" at the door. *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at \*3 (11th Cir. Nov. 8, 2023).

Because Rose is navigating this litigation pro se, the Court holds her pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That means we view her complaint with a generous eye and do our best to discern the legal core of her arguments. *Id.* Yet a liberal construction only goes so far. It is not a license to act as the plaintiff's de facto counsel or rewrite fundamentally deficient pleadings to manufacture an actionable claim. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). Even a pro se litigant must allege foundational facts that rise above pure speculation.

## II. Discussion

Arts Bonita's motion attacks the complaint on three distinct fronts. First, it takes aim at the constitutional and statutory civil rights claims, arguing that a private organization is immune from scrutiny under the First Amendment

3

and Florida's Religious Freedom Restoration Act. Second, it challenges the Florida Civil Rights Act claims, asserting that Rose ran to court before exhausting her administrative remedies. Finally, it targets the remaining state-law claims, contending they lack the basic factual scaffolding required to state a plausible claim for relief. (Doc. 19.) These arguments are addressed in turn.

### A. The First Amendment & Florida's Religious Freedom Restoration Act

The First Amendment restrains the government, not private parties. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) ("The Free Speech Clause does not prohibit private abridgment of speech."). The Florida Religious Freedom Restoration Act (RFRA) operates on the same principle, expressly restricting the "government." Fla. Stat. § 761.03(1); *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fla.*, 430 F. Supp. 2d 1296, 1321 (S.D. Fla. 2006). Rose does not dispute that Arts Bonita is a private, nonprofit organization. Her claims, then, can survive only if the organization's conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Rose argues that Arts Bonita essentially stepped into the government's shoes by operating a festival in a public park under a municipal permit and then calling the police to enforce her removal. (Doc. 23 at 5-6.) But

4

transforming private action into state conduct is a high bar. *See Wooten v. La Salle Corr.*, 748 F. Supp. 3d 1363, 1374 (M.D. Ga. 2024). Holding a private art festival on public property with a permit, like alleged here, does not transform the organizer into a municipal agent or otherwise create state action. *See, e.g.*, *United Auto Workers, Loc. No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 910 (4th Cir. 1995) ("The possession of a permit to perform on public property what are ordinarily private functions does not convert the permit holder into a state actor."). And merely calling the police to enforce a private right to exclude someone from an event does not create the kind of nexus or joint action required to trigger constitutional scrutiny. *See Woods v. Valentino*, 511 F. Supp. 2d 1263, 1274 (M.D. Fla. 2007) ("Private entities do not transform themselves into state actors simply by calling the police.").

In her opposition brief, Rose attempts to bridge this gap by offering a host of new factual allegations meant to tie Arts Bonita more closely to the municipal government. (Doc. 23.) The problem is that none of these details appear in her actual complaint. Under the facts pled, when Arts Bonita told Rose to leave and called the police, it was seemingly acting as a private entity managing its permitted space. Nothing in the complaint transforms that private conduct into state action under any recognized test. *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Rose points to no facts suggesting the government coerced or significantly encouraged Arts Bonita to

censor her artwork or eject her from the festival. Arts Bonita did not assume a traditional public function. And as mentioned, summoning the police does not establish the symbiotic interdependence required to transform a private actor into a state agent. *See Kelly v. Broward Sheriff's Off. Dep't of Det.'s*, 560 F. App'x 818, 821 (11th Cir. 2014) ("Only in rare circumstances can a private party be viewed as a state actor[.]"). Because Arts Bonita is not a state actor under the existing complaint, the First Amendment and RFRA claims (Counts I and II) fail as a matter of law.

## B. Administrative Exhaustion

In Counts III and IV, Rose pivots to the Florida Civil Rights Act (FCRA). She alleges religious discrimination in a public accommodation and retaliation. But before bringing these claims into federal court, the FCRA requires a plaintiff to fully exhaust her administrative remedies by filing a charge with the Florida Commission on Human Relations and waiting the statutory period. *See Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002).

Rose concedes that she filed her FCHR charges on February 4, 2026, and the administrative process is still underway. (Doc. 23 at 16.) So she asks the Court to stay these claims rather than dismiss them. (*Id.*) But when a plaintiff files suit prematurely, the proper procedural mechanism is generally dismissal. After all, the very point of the exhaustion requirement is to give the

6

administrative agency a first crack at investigating and potentially resolving the dispute—which could ultimately preclude the need for litigation altogether. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Allowing a plaintiff to park unexhausted claims on the federal docket defeats that purpose. If Rose's administrative process finishes without a resolution, she is free to move to amend her complaint to reassert these claims. But the Court declines to hold half of a lawsuit in limbo and litigate this case piecemeal. Counts III and IV are therefore dismissed without prejudice.

## C. State Law Claims

That leaves the state-law tort and contract claims. Even under the forgiving standard afforded to pro se litigants, a complaint must contain enough factual detail to ascertain the basic elements of the claims alleged. *Ashcroft*, 556 U.S. at 678. Rose's remaining counts fall short of that basic standard.

Start with the breach of contract claim in Count V. Rose maintains that her "jury acceptance and festival rules" created an implied contract, which Arts Bonita breached by ejecting her. (Doc. 1 at 9.) But to state a valid claim here, Rose must allege, among other things, the material terms of the contract that were breached. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Her vague gesture toward "festival rules" offers no way for the Court— or the Arts Bonita—to know what obligations were allegedly formed and

broken. *See, e.g.*, *City of Delray Beach v. Sherman Williams Am. Legion, Post 188*, 358 So. 3d 440, 443 (Fla. Dist. Ct. App. 2023).

As for the fraud claim in Count VI, Rule 9(b) requires a plaintiff to plead fraud with particularity. *See* Fed. R. Civ. P. 9(b). Rose asserts that the "potential withholding or concealing the People's Choice Award constituted" fraud. (Doc. 1 at 9.) "Potential" is the exact opposite of particularity. The complaint fails to identify a single false statement, who made it, when it was made, or how Rose relied on it to her detriment. Far more specificity is required here. *See, e.g.*, *Centennial Bank v. Noah Grp., LLC*, 445 F. App'x 277, 278 (11th Cir. 2011).

Finally, Count VII alleges intentional infliction of emotional distress (IIED) based on the "physical removal, threats, organized slander, and ongoing harassment." (Doc. 1 at 9.) Under Florida law, IIED requires conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *See Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Chingarev v. Rambosk*, No. 2:22-CV-494-KCD-NPM, 2025 WL 3767952, at *3 (M.D. Fla. Dec. 31, 2025). Calling the police to enforce a private festival's display rules, demanding an artist leave, and the ensuing fallout on social media simply do not rise to the level of atrocity required to sustain this

tort. Indeed, "even claims of intentional infliction of emotional distress based on false accusations of criminal activity and false arrest fail because such conduct, as a matter of law, is not sufficiently outrageous." *Cortez v. Home Depot U.S.A., Inc.*, No. 12-CV-14177-KMM, 2013 WL 12077478, at \*4 (S.D. Fla. Jan. 31, 2013).

### III. Conclusion

Arts Bonita asks the Court to dismiss the complaint with prejudice. (Doc. 19 at 16-17.) But that is a step too far, at least for now. Unless a more carefully drafted pleading could not state a claim, a pro se plaintiff must generally be given at least one opportunity to amend. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Rose is navigating this process without a lawyer, and her opposition brief bristles with more allegations that she claims will cure the defects above. While her current complaint falls well short of the plausibility threshold, the Court cannot say with certainty that any attempt to amend would be an exercise in futility. Accordingly, the dismissal will be without prejudice, affording Rose another chance to correct these deficiencies and re-plead her case. Rose may file an amended complaint within fourteen days of this order.

One final word is in order. The Court has discovered at least one fabricated judicial decision in Rose's briefing. (Doc. 23 at 16 (citing *Prousalis v. Bert's Bikes & Fitness*, No. 8:18-cv-1234, 2019 WL 13202785 (M.D. Fla.

9

2019).) That discovery—coupled with the sudden, highly robust legal discussion that differs from her threadbare complaint—all but confirms she is using generative artificial intelligence. Let me be clear: this Court does not prohibit litigants from using AI tools. But every party, pro se or otherwise, remains ultimately responsible for the filings they submit. Rule 11 requires that legal contentions be warranted by actual, existing law—a standard that applies equally whether a brief is handwritten or generated by an algorithm. *See* Fed. R. Civ. P. 11(b)(2).

This Court's docket is busy enough. It should not have to independently comb through the record to discern what is real or fake. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023) (imposing sanctions for the submission of an AI-generated brief replete with "bogus opinions"). To the extent the Court finds any additional hallucinations or stray citations in future filings, sanctions will follow, **which could include dismissal**. "Whatever the merits of artificial intelligence, it is no substitute for actual intelligence." *Akerlund v. Atlas Air, Inc.*, No. 24-11033, 2026 WL 1993146, at *5 (11th Cir. July 10, 2026).

**ORDERED** in Fort Myers, Florida on July 12, 2026.

Kyle C. Dudek
United States District Judge

10