UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JULIA ROSE,

      Plaintiff,                     Case No. 2:26-cv-484-KCD-KRH

     v.

ARTS BONITA, INC., A FLORIDA
NOT-FOR-PROFIT
CORPORATION;  CITY OF
BONITA SPRINGS, A FLORIDA
MUNICIPAL CORPORATION
SERVICE-CITY CLERK; AND
MAUREEN ROBERTS,
INDIVIDUALLY;

      Defendants,

_____/

## ORDER

Plaintiff Julia Rose is a professional artist whose work blends religious and political themes. For instance, she often pairs images of Jesus with President Trump. Here is an example:



(Doc. 23 at 3.)[1] In 2025, Rose displayed her works at the Arts Bonita Fine Arts Festival, an exhibition held at a public park and permitted by the City of Bonita Springs. But the festival's organizer, Arts Bonita, Inc., saw a problem. Citing complaints and an apparent mismatch with the style she had originally submitted for selection, the festival's director ordered Rose to leave and called the police to enforce the ejection. (Doc. 1 at 2-3.)

Rose responded by filing this lawsuit against Arts Bonita, its director Maureen Roberts, and the City. She brings a mix of federal and state claims against the City, including a First Amendment challenge, violations of Florida's civil rights and religious freedom statutes, and a tort claim for intentional infliction of emotional distress. (*Id.* at 8-9.) The City now moves to dismiss the complaint, arguing that it cannot be held liable for the independent actions of a private arts organization and its director. (Doc. 11.) The Court agrees that Rose has not stated a viable claim at this point, so the City's motion is **GRANTED**.

## I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain more than legal labels or hint at a general grievance. It must allege enough "factual content that allows the court to draw the reasonable inference

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). But that deference has a limit: we leave legal conclusions, naked assertions, and "formulaic recitation[s] of the elements" at the door. *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023).

Because Rose is navigating this litigation pro se, the Court holds her pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That means we view her complaint with a generous eye and do our best to discern the legal core of her arguments. *Id.* Yet a liberal construction only goes so far. It is not a license to act as the plaintiff's de facto counsel or rewrite fundamentally deficient pleadings to manufacture an actionable claim. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). Even a pro se litigant must allege foundational facts that rise above pure speculation.

## II. Discussion

The claims at issue are addressed in turn.

### A. Count I—First Amendment

To start, Rose has not alleged that the City took any direct action to infringe on her First Amendment rights. The City itself was not at the art

festival. Rose does not claim that municipal employees asked her to leave, nor does she suggest they had any problem with her art. Instead, her grievance lies against a private organization and its director. Generally speaking, a municipality is not responsible for the conduct of a private party. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he party charged with the [constitutional] deprivation must be a person who may fairly be said to be a state actor."). That rule holds firm even if the private actor is acting under a municipal permit. *See Sistrunk v. City of Strongsville*, 99 F.3d 194, 198 (6th Cir. 1996); *United Auto Workers, Loc. No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 910 (4th Cir. 1995) ("The possession of a permit to perform on public property what are ordinarily private functions does not convert the permit holder into a state actor."). To be sure, certain facts could compel a different result. *See, e.g.*, *Sistrunk v. City of Strongsville*, 99 F.3d 194, 198 (6th Cir. 1996). But there are no such allegations here.

That aside, even if the art festival's conduct could somehow be pinned on the City, Rose's claim runs into another wall. A municipality cannot be held liable simply because it employs a tortfeasor—or, in this case, permits an event whose organizers allegedly violate the Constitution. There is no *respondeat superior* liability for civil rights violations. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). To keep the City in this lawsuit, Rose must allege that an official municipal policy or a well-settled custom was the

4

"moving force" behind her injury. *Id.* at 694. The complaint, however, identifies no such policy or custom. It describes only a single run-in with a private director and the responding police officers. Without a plausible allegation that the City itself enacted a policy or fostered a custom of viewpoint discrimination, the First Amendment claim fails. *See, e.g., Stevens v. Sch. Bd. of Broward Cnty.*, Fla., No. 24-61926-CIV, 2025 WL 18665, at *5 (S.D. Fla. Jan. 2, 2025).

Rose insists that she "is not required to prove a formal written policy at the pleading stage." (Doc. 14 at 2.) To be sure, she need not *prove* anything now. But she must allege sufficient facts to make it plausible that the City has an unconstitutional policy or custom. *See Wade v. City of Miami Beach*, 565 F. Supp. 3d 1248, 1252 (S.D. Fla. 2021). The complaint here falls well short of that bar. *See, e.g., Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) ("Proof of a single incident of unconstitutional activity cannot suffice under *Monell* to impose liability on the County."). Without more, the City cannot be held liable under the First Amendment for Arts Bonita's curatorial decisions.

### B. Count II— Florida's Religious Freedom Restoration Act (RFRA)

The problem with this claim, like above, is basic attribution. The complaint's narrative makes clear that it was Roberts—the director of Arts Bonita—who removed the artwork and demanded Rose's exit. The City's only alleged involvement was permitting the event and furnishing the police officers

who responded to the conflict. Rose offers no case law, or even argument, illustrating how that conduct proves the City "substantially burdened [her] exercise of religion." Fla. Stat. § 761.03(1). To be sure, getting removed from an art show because of religious content might look and feel like discrimination. But there is a fundamental difference between an act of discrimination and a government-imposed burden on the *exercise of religion*. *See Christian Romany Church Ministries, Inc. v. Broward Cnty.*, 980 So. 2d 1164, 1167 (Fla. Dist. Ct. App. 2008) ("[A] substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires."). The facts alleged simply do not evidence a plausible claim under § 761.03.

### C. Counts III & IV— Florida's Civil Rights Act (FCRA)

As the Court explained in its last order (Doc. 49), these claims stumble right out of the gate because they are unexhausted. A plaintiff must wait out the administrative process before bringing an FCRA claim to court. *See Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002). By Rose's own admission, her administrative charges remain pending before the state commission.

What is more, Rose should consider that even if she eventually clears the exhaustion hurdle, Count IV suffers from a substantive defect. She brings this

retaliation claim under Fla. Stat. § 760.10(7). But that statute governs "unlawful employment practices," and it applies to the workplace. *See Vill. of Tequesta v. Luscavich*, 240 So. 3d 733, 738 (Fla. Dist. Ct. App. 2018). There are no facts to suggest Rose was a municipal employee at the time of these events.

### D. Count VII—Intentional Infliction of Emotional Distress (IIED)

We need not spend long on Rose's final claim. It is well-settled that she cannot assert an IIED claim against the City. *See Grasso v. Varner*, No. 4:21-CV-310-WS-MJF, 2023 WL 2465598, at \*10 (N.D. Fla. Jan. 30, 2023) ("Because a successful IIED claim necessarily requires that the defendant engage in willful and wanton conduct, Florida courts have long recognized that Fla. Stat. § 768.28(9)(a) bars official-capacity IIED claims."); *Magielski v. Sheriff of St. Lucie Cnty.*, No. 2:11-CV-14235-KMM, 2011 WL 5102238, at \*2 (S.D. Fla. Oct. 26, 2011) ("[S]overeign immunity bars IIED claims against the state or its subdivisions[.]"); *Ayubo v. City of Edgewater*, No. 6:08-CV-1197ORL31GJK, 2009 WL 113381, at \*3 (M.D. Fla. Jan. 16, 2009) ("[T]he reckless conduct requirement required to establish a prima facie case of [IIED] is the equivalent of willful and wonton conduct, and that sovereign immunity therefore shields [Florida municipalities] from [IIED claims].").

### III. Conclusion

The bottom line is that Rose's current complaint fails to state a viable claim against the City. But the Court cannot say a more carefully drafted

7

pleading would be entirely devoid of merit. When a pro se plaintiff's complaint falls short, she generally gets another bite at the apple if a better-drafted version might state a claim. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). So while the City's motion to dismiss is granted, the door is not slammed shut. Rose may file an amended complaint within fourteen days of this order.

**ORDERED** in Fort Myers, Florida on July 12, 2026.

Kyle C. Dudek
United States District Judge